The **COLORADO BOARD OF MEDICAL EXAMINERS, Plaintiff–Appellee and Cross–Appellant,**

v.

**W.M. RAEMER, D.D.S., Defendant–Appellant and Cross–Appellee.**

No. 87CA1589.

Colorado Court of Appeals, Div. IV.

March 22, 1990.

Rehearing Denied April 19, 1990.

Certiorari Granted July 23, 1990.

**1076**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., James M. Humes, Asst. Atty. Gen., Kathie A. Clinton, Asst. Atty. Gen., Denver, for plaintiff-appellee and cross-appellant.

Andrew L. Quiat, P.C., Andrew L. Quiat, Denver, for defendant-appellant and cross-appellee.

Opinion by Chief Judge KELLY.

This case presents the question whether craniosacral manipulation in the treatment of temporomandibular joint dysfunction constitutes the practice of dentistry as defined in § 12–35–110(1), C.R.S. (1985 Repl. Vol. 5). We conclude that it does and, thus, affirm in part and reverse in part the judgment of the trial court.

The State Board of Medical Examiners brought this action pursuant to § 12–36–132, C.R.S. (1985 Repl.Vol. 5), seeking to enjoin Dr. W.M. Raemer, D.D.S., from performing craniosacral manipulation without a medical license. Raemer counterclaimed seeking a judgment declaring that this procedure is within the scope of his license to practice dentistry. The trial court, to the dissatisfaction of both parties,

entered a preliminary injunction and declaratory judgment prohibiting Raemer from performing treatment "involving structures of the neck and below," *i.e.*, sacral manipulation, but allowing him to perform treatment "above the neck," *i.e.*, cranial manipulation. Pursuant to stipulation of the parties, the trial for a permanent injunction was consolidated with the preliminary injunction hearing, and the trial court's order became final.

Temporomandibular joint dysfunction is a misalignment of the joint between the temporal bone, on the side of the skull, and the mandible, or lower jawbone. Although it can have many causes, temporomandibular joint dysfunction can be treated effectively with craniosacral manipulation. This procedure involves pressure upon the cranium and the sacrum. This pressure then moves the dura mater which runs along the spine between the cranium and the sacrum. The dura mater is also connected to the temporal bone, and its movement results in realignment of the temporomandibular joint.

■ It is undisputed that craniosacral manipulation is an osteopathic procedure, and, as such, it constitutes the practice of medicine. *See* § 12–36–106(1)(a), C.R.S. (1985 Repl.Vol. 5). Thus, it must ordinarily be performed by a person holding a medical license. *See* § 12–36–106(2), C.R.S. (1985 Repl.Vol. 5). However, in certain circumstances, a person who does not have a medical license may perform acts which would otherwise constitute the practice of medicine. One such circumstance is the practice of dentistry by a licensed dentist. Section 12–36–106(3)(c), C.R.S. (1985 Repl. Vol. 5).

Raemer argues that craniosacral manipulation, when used to treat temporomandibular joint dysfunction, is a dental procedure, and it therefore falls within the exemption of § 12–36–106(3)(c). We agree.

The practice of dentistry is defined in § 12–35–110(1) which provides, in part:

"Any person shall be deemed to be practicing dentistry who:

. . . .

(f) diagnoses ... [or] treats ... disease, pain, deformity, deficiency, injury, or physical condition *of the human teeth or jaws or adjacent structure....*" (emphasis added)

The Board contends that the emphasized language means that the treatment must be *upon* the teeth, jaws, or a contiguous structure. Thus, because craniosacral manipulation, although it *affects* the jaws, is not performed directly *upon* them, it is not a dental procedure. We do not agree that the statute is so limited.

Our primary task in construing a statute is to ascertain and implement the intent of the General Assembly. To discern that intent, we look first to the language of the statute, giving effect to the ordinary meaning of the words and phrases used. *People v. District Court*, 713 P.2d 918 (Colo.1986). We must consider the statute as a whole and give meaning to every word. *See Ouray v. Olin*, 761 P.2d 784 (Colo.1988).

When read as a whole, § 12–35–110(1)(f), C.R.S. (1985 Repl.Vol. 5) states that a dentist is a person who treats pain or physical conditions of the jaw and adjacent structures. This is not a limit on the possible methods of treatment; instead, it limits the structures to be affected by the treatment. Hence, any treatment which relieves pain or corrects a physical condition occurring in the teeth, jaws, or adjacent structures constitutes dentistry. This conclusion is supported by § 12–35–110(1)(a), C.R.S. (1985 Repl.Vol. 5) which states that the performance of a dental therapeutic service "of any kind" is the practice of dentistry.

Because temporomandibular joint dysfunction is a misalignment of the temporal bone and mandible, it is a "physical condition" of the jaw and an adjacent structure. Craniosacral manipulation is treatment of those structures because it changes their physical condition and relieves the pain of temporomandibular joint dysfunction. Consequently, craniosacral manipulation constitutes the practice of dentistry. Hence, it is exempt from the medical licensing requirements pursuant to § 12–36–106(3)(c).

The Board asserts that the trial court erred in taking judicial notice of certain medical texts. We need not consider this assertion because, if such notice did occur, it did not affect the outcome, and the error, if any, was harmless.

That part of the trial court's judgment prohibiting Raemer from performing sacral manipulation is reversed. The judgment is otherwise affirmed, and the cause is remanded for entry of a declaratory judgment allowing Raemer to perform craniosacral manipulation in the treatment of temporomandibular joint dysfunction.

REED and RULAND, JJ., concur.